IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Criminal Action No. **3:18-CR-456-L** |
| | § | |
| | § | |
| **ELISEO VEGA,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Eliseo Vega's ("Defendant" or "Vega") Motion to Dismiss the Indictment (Doc. 16), filed November 30, 2018; the Government's Response to Defendant's Motion to Dismiss the Indictment (Doc. 17), filed December 14, 2018; Defendant's Reply to Government's Response to Defendant's Motion to Dismiss (Doc. 23), filed January 14, 2019; and Government's Amended Sur-Reply to Defendant's Motion to Dismiss Indictment (Doc. 27), filed February 13, 2019. After careful consideration of the motion, record, and applicable law, the court **denies** Defendant's Motion to Dismiss the Indictment (Doc. 16).

**I.    Background**

On September 11, 2018, Vega was named in a one-count indictment charging him with Illegal Reentry After Removal from the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). Vega was first removed to Mexico on January 13, 2009, based on a removal order issued *in absentia* by an immigration judge at a hearing held July 2, 2008. Vega did not appeal the removal order, and it has been reinstated four times. On July 29, 2018, Vega was detained by immigration authorities in Dallas, Texas and subsequently charged with the offense.

Vega moves to dismiss the indictment on the basis that it fails to establish an essential element of the offense: that Defendant has been "denied admission, excluded, deported, or removed" as set forth in 8 U.S.C. § 1326(a)(1). Vega argues that he has never been "deported or removed" as a matter of law because the underlying removal order was issued by an immigration court lacking subject matter jurisdiction and, thus, void. Alternatively, Vega makes a collateral attack on the removal order pursuant to 8 U.S.C. § 1326(d), which allows aliens to challenge the validity of an underlying deportation order if they meet certain requirements.

The Government responds that the immigration court was properly vested with jurisdiction to issue the removal order and disagrees with Vega's interpretation of relevant authority on this issue. The Government argues that the only procedural manner in which Vega may attack the removal order is meeting the criteria set forth in 8 U.S.C. § 1326(d), which it argues that Vega has failed to do.

## II. Analysis

### A. Immigration Court's Jurisdiction to Issue Removal Order

As a threshold matter, the parties dispute whether Vega may make a jurisdictional challenge to the validity of the removal without first satisfying each of the statutory requirements for making a collateral attack to an underlying deportation order pursuant to 8 U.S.C. § 1326. Vega argues that any judgment may be collaterally attacked if it is void for lack of jurisdiction and that a challenge on these grounds may not be waived. The Government contends that Vega must first meet the requirements of section 1326(d)—particularly its requirement that an alien exhaust administrative remedies before challenging a removal order in federal court—before this court may exercise jurisdiction over his collateral jurisdictional challenge.

District courts are split on whether a defendant must first satisfy the section 1326(d) statutory requirements before a court may consider the merits of a jurisdictional argument similar

**Memorandum Opinion and Order – Page 2**

to the one advanced by Vega. *Compare, e.g., United States v. Hernandez-Lopez*, No. 5:18-CR-625(1)-DAE, 2018 WL 6313292, at *3 (W.D. Tex. Dec. 3, 2018) (holding that a defendant challenging a removal order as jurisdictionally defective must still satisfy the requirements of section 1326(d) and challenges to subject-matter jurisdiction may be waived for the purposes of a subsequent collateral attack, subject to a narrow exception), *and United States v. Zapata-Cortinas*, 351 F. Supp. 3d 1006, 1019 (W.D. Tex. 2018) (holding that a defendant must satisfy the requirements of section 1326(d) to collaterally attack the underlying removal order because section 1326(d) "necessarily contemplates that flawed or invalid removal proceedings may still serve as the basis of a 'prior removal' in a section 1326(a) prosecution if the requirements are not met"), *with United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164, 1166 (E.D. Wash. 2018) (holding that upon showing that an immigration court lacked jurisdiction and the administrative proceedings were void, a section 1326 defendant need not meet the statutory exhaustion requirement to challenge the sufficiency of the indictment), *and United States v. Alfredo Valladares*, No. A-17-CR-00156-SS, 2018 WL 6629653, at *2 (W.D. Tex. Jan. 29, 2019) (holding that a defendant may "collaterally attack the judgment as being void for lack of jurisdiction notwithstanding the fact that such grounds are absent from section 1326(d)" and quoting *Jacuzzi v. Pimienta*, 762 F.3d 419, 420 (5th Cir. 2014) for its holding that "any judgment may be collaterally attacked if it is void for lack of jurisdiction" and citing *Matter of Reitnauer*, 152 F.3d 341, 344 n.12 (5th Cir. 1998) for its holding that, "It is true that (1) jurisdictional defects render a judgment void, and (2) void judgments are subject to collateral attack.").

The court declines to take a position on this threshold issue because, for the reasons that follow, it finds that Vega's jurisdictional argument is neither consistent with the Fifth Circuit's guidance on this issue nor supported by established law in this Circuit. As Vega presents no viable argument in support of his position, the court determines he is required to satisfy the statutory

**Memorandum Opinion and Order – Page 3**

requirements set forth in section 1326(d) before the court may consider the merits of his challenge to the removal order's validity.

Vega argues that an immigration court's jurisdiction vests only when a Notice to Appear ("NTA") is filed with the court that contains certain details regarding an alien's removal proceedings, including the place, date, and time of the hearing. The NTA mailed to Vega, and filed with the immigration court, did not contain the place, date, and time of the hearing. It advised him that he was subject to removal proceedings under the Immigration and Nationality Act ("INA") and stated that he was ordered to appear before an immigration judge of the United States Department of Justice "on [a date] to be scheduled." Gov.'s App., Ex. 5, Doc. 28-1 at 2. There is no specified address for the immigration court at which his hearing would be held. The NTA was delivered by certified mail through the U.S. Postal Service to the mailing address on file with Immigration Services sometime in January 2007. According to the Government, a Notice of Hearing ("NOH") was subsequently mailed to the same address, which contained the date, time and location of the hearing, but it was sent back to Immigration Services with a "Returned to Sender" stamp. Vega's hearing was held July 2, 2008, and he was not present. The immigration court found that Vega's failure to appear was willful because he had been provided with written notification of the time, date, and location of the removal hearing. Gov. Resp., Doc. 17 at 7. After determining Vega was removable, the court issued the removal order.

Vega's legal proposition—that filing an NTA with complete time, date, and location information is required to vest jurisdiction in an immigration court—is not an established statement of the law by either this Circuit or the Supreme Court. Vega's argument, rather, relies on a broad interpretation of a recent Supreme Court case, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), decided on June 21, 2018. *Pereira* concerned the "stop-time rule," which involves a form of relief from immigration proceedings called a "cancellation of removal" and applies to aliens who have been

**Memorandum Opinion and Order – Page 4**

physically present in the United States for a continuous period. Vega's argument relies on the central holding in *Pereira* that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a notice to appear under section 1229(a)." *Id*. at 2113-14.

Section 1229(a) of the INA sets forth the statutory requirements for giving aliens notice that they are subject to a removal proceeding. Pursuant to this section, an alien must be provided with an NTA that specifies certain information, including, *inter alia*, "the nature of the proceedings against the alien," "the acts or conduct alleged to be in violation of law," and, significantly, "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1).

Vega argues that, in light of *Pereira*, any Notice to Appear that fails to specify the time or place of a hearing in violation of section 1229(a)(1) is deficient as a matter of law. Vega contends that, in the absence of a statutorily compliant NTA, an immigration court lacks jurisdiction, based on his interpretation of section 1003.14 of the Rules of Procedure for Immigration Court, which govern the jurisdiction and commencement of proceedings. Section 1003.14 states in relevant part that, "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a *charging document* is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14 (emphasis added). Under the definitions section of the Rules, a charging document is defined as "the written instrument which initiates a proceeding before an Immigration Judge . . . [and] includes a *Notice to Appear*, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien." *Id*. (emphasis added). As Vega's argument goes, a deficient NTA renders incomplete a charging document, which is required under section 1003.14 to vest an immigration court with jurisdiction over a removal proceeding. As the NTA issued to Vega lacked the requisite information, no charging instrument was filed that vested the

immigration court jurisdiction to issue the order upon which he was removed and which forms the basis for this offense.

Since the Supreme Court's issuance of *Pereira* in 2018, Vega's argument has been tested in various district courts around the country and resolved by a handful of courts of appeals, to varying results. Courts are split over the implications of *Pereira* and whether its import renders void a removal order that has been issued in a hearing commenced by an NTA that lacks time-and-place information. *See, e.g., Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314 (6th Cir. 2018) (concluding that *Pereira* is "an imperfect fit in the jurisdictional context"); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160-62 (9th Cir. 2019) (rejecting the defendant's argument that, in light of *Pereira*, an NTA lacking the time for a removal hearing does not vest jurisdiction with the immigration court because "*Pereira* dealt with an issue distinct from the jurisdictional question confronting us in this case" and the Supreme Court's "resolution of that 'narrow question' cannot be recast into the broad jurisdictional rule [the defendant] advocates"); *United States v. Perez-Arellano*, 2018 WL 6617703, at *3 (4th Cir. 2018) ("Simply put, Pereira did not address the question of an immigration judge's jurisdiction to rule on an alien's removability"); *United States v. Munoz-Alvarado*, No. CR-18-171-C, 2018 WL 4762134, at * (W.D. Okla. Oct. 2, 2018) (noting that the defendant's motion sought to "broaden the scope of *Pereira* far beyond that evidenced by the carefully crafted language of the opinion"); *cf. Alfredo Valladares*, 2018 WL 6629653 at *6-7 (determining that *Pereira* mandates that all NTA's filed and used as charging documents include time-and-place information for an immigration court's jurisdiction to vest); *Zapata-Cortinas*, 351 F. Supp. 3d at 1013 ("[T]he plain reading of § 1229(a) and *Pereira* clearly demonstrate that an NTA that fails to include the time or place of the removal hearing is deficient under the statute and renders void a removal order issued at that hearing"); *United States v. Ortiz*, 347 F. Supp. 3d 402, 406-07 (D. N.D. 2018) (interpreting *Pereira* as invalidating an NTA lacking time-and-place

location and determining that a defective NTA deprived the immigration judge of the jurisdiction necessary to enter the removal order).

Although the Fifth Circuit has not issued any opinions that bear directly on this issue, it has expressly refrained from extending *Pereira* beyond the context of the "stop-time rule" in three cases involving a defendant's appeal of a Board of Immigration Appeal's decision denying or dismissing a motion to reopen removal proceedings. *Ramos-Portillo v. Barr*, No. 17-60254, 2019 WL 1434941, at *2 n.3 (5th Cir. 2019) ("[T]he Supreme Court's decision in [*Pereira*] has no bearing on this appeal, because Pereira concerned the stop-time rule for cancellation of removal and this appeal concerns reopening."); *Fuentes-Pena v. Barr*, 917 F.3d 827, 830 n.2 (5th Cir. 2019) (stating that, in *Pereira*, the Supreme Court addressed a "'narrow question' regarding the effect of an NTA that does not specify the time or place of the removal hearing on the trigger for the 'stop-time rule' for the purposes of a cancellation of removal"); *Mauricio-Benitez v. Sessions, III, U.S.*, 908 F.3d 144, 148 n.1 (5th Cir. 2018) ("Because the issues in this case pertain only to reopening, *Pereira*'s rule regarding cancellation is inapplicable") (citing case authority in which one court "declin[ed] to read *Pereira* as applying more broadly than in stop-time rule cancellation cases" and another court "[found] *Pereira* distinguishable because the stop-time rule was not at issue in the case") (citations and quotation marks omitted)).

These decisions do not expressly foreclose Vega's application of *Pereira* to the jurisdictional context; however, they do clearly indicate a caution in broadening the application of *Pereira* beyond the context of the "stop-time rule." This court is, therefore, unwilling to consider Vega's argument without more affirmative guidance. The court recognizes that other district courts in Texas have ruled otherwise, but it does not believe those opinions comport with the Fifth Circuit's express hesitation in applying *Pereira* outside the narrow issue presented in that case. Were the court to adopt Vega's reasoning, the effect would be, in essence, to require that every

**Memorandum Opinion and Order – Page 7**

initial NTA sent by Immigration Authorities contain a time and date—irrespective of whether a subsequent NOH is sent that contains that information. Such holding would have significant consequences for criminal prosecutions of section 1326 offenses when the underlying removal proceeding was initiated with an NTA lacking time-and-date information. *Cf. Alfredo Vallardes*, 2018 WL 6629653, *6 n.4 (applying *Pereira* to requirements for valid NTA's and recognizing that its decision "might have unexpected consequences for illegal reentry prosecutions").

The court next turns to whether Vega has met the statutory requirements for making a collateral attack on the underlying deportation order pursuant to 8 U.S.C. § 1326(d).

### B. 1326(d) Requirements

Section 1326(d) provides that an alien seeking to collaterally attack a prior removal order during a § 1326(a) prosecution must demonstrate that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The Fifth Circuit has additionally required that the alien make a showing of actual prejudice to succeed in such collateral attack, which requires demonstrating that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658-89 (5th Cir. 1999) (citations and quotation marks omitted). "To successfully challenge a removal order, the alien must prove all three prongs [of section 1326(d)]." *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015). "If the alien fails to establish one prong of the three-part test, the [c]ourt need not consider the others." *Id.* (citing *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003)).

Vega argues that his removal order was fundamentally unfair and violates due process, and that he was not required to exhaust his administrative remedies or seek judicial review because the administrative proceedings were void. Vega's attempt to circumvent two of the section 1326(d) requirements relies on the court accepting his jurisdictional challenge, which the court has rejected. The Government argues that the court must deny Vega's motion on the basis that he failed to meet the exhaustion requirement or show that the deportation proceedings deprived him of the opportunity for judicial review.

The court determines that Vega failed to exhaust his administrative remedies and, as the court need not consider the other statutory requirements, it determines that this failure mandates denial of his Motion to Dismiss the Indictment. Under 8 U.S.C. § 1229a(b)(5)(C), an alien who demonstrates that he or she did not receive notice in accordance with section 1229(a)'s notice requirements for removal proceedings may file a motion to reopen with the immigration court *at any time*. Vega is, therefore, not foreclosed from filing a motion to reopen his removal proceeding and rescind his removal order if he is able to demonstrate that he "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(C)(ii). If the immigration court reopens his removal proceedings and affirms the order as a final decision, Vega then may appeal that decision by filing a motion to reopen with the Board of Immigration Appeals pursuant to procedural rule 8 C.F.R. § 1003.2(c)(2), which allows an alien to file a motion to reopen proceedings "no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." If Vega's motion to reopen proceedings was either denied or dismissed, he could then appeal that decision to the Fifth Circuit.

As Vega failed to exhaust his administrative remedies, the court **denies** his Motion to Dismiss the Indictment because he has failed to establish the statutory requirements for collaterally attacking the underlying deportation order pursuant to 8 U.S.C. § 1326(d).

### III. Conclusion

For the reasons herein stated, the court **denies** Vega's Motion to Dismiss the Indictment (Doc. 16).

**It is so ordered** this 11th day of April, 2019.

Sam A. Lindsay
United States District Judge